UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL KEITH WILLIAMS,   ) | 1:06-CV-00329 OWW GSA HC |
| ) | |
| Petitioner,   ) | |
| ) | FINDINGS AND RECOMMENDATION |
| v.   ) | REGARDING PETITION FOR WRIT OF |
| ) | HABEAS CORPUS |
| ) | |
| SCOTT KERNAN, Warden,   ) | |
| ) | |
| Respondent.   ) | |
| ) | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Kern, following his conviction by plea of nolo contendere on December 27, 2000, of second degree robbery (Cal. Penal Code § 212.5(c)). (LD[1] 1.) Petitioner also admitted allegations that he had suffered two prior serious felony convictions. (LD 1.) On January 25, 2001, Petitioner was sentenced to serve a total indeterminate term of twenty-five years to life in state prison. (LD 1.)

Petitioner did not timely file a notice of appeal. (LD 2, 3.) He did, however, file a petition for

---

[1] "LD" refers to the documents lodged by Respondent with his motion to dismiss.

writ of habeas corpus in the Kern County Superior Court on November 28, 2001, and it was denied in a reasoned opinion on December 20, 2001. (LD 6, 7.) He then filed a habeas petition in the California Court of Appeals, Fifth Appellate District (hereinafter "Fifth DCA"). (LD 8.) On February 21, 2002, the petition was denied without prejudice. (LD 9.) Petitioner then filed a petition for writ of habeas corpus in the California Supreme Court. (LD 10.) The California Supreme Court denied the petition on July 10, 2002. (LD 11.)

Petitioner filed a federal habeas petition in this Court on October 15, 2002. See Michael Keith Williams v. D. L. Runnels, Case No. 1:02-CV-6302-REC-WMW-HC. On April 28, 2005, the petition was dismissed without prejudice for failure to timely comply with court orders and for failure to prosecute. On March 24, 2006, Petitioner filed the instant petition for writ of habeas corpus. Petitioner presents the following grounds for relief: 1) "Petitioner's constitutional rights to due process under both state/federal constitutions were violated where terms of plea was [sic] breached"; 2) "Petitioner's constitutional right to effective assistance of counsel during plea was violated where counsel induced plea by misrepresentations"; and 3) "Petitioner's constitutional right to due process under both state/federal constitution[s] was violated where plea was not knowing and intelligent." Respondent filed a motion to dismiss the petition on August 21, 2006, for violating the statute of limitations, but the motion was later withdrawn. On January 22, 2007, Respondent filed an answer to the petition. On February 27, 2007, Petitioner filed a traverse.

## FACTUAL BACKGROUND[2]

On September 25, 2000, at approximately 3:45 p.m., officers of the Bakersfield Police Department received a report of a robbery which had just occurred. The officers responded to the area and observed the suspect vehicle, with three occupants later identified as Petitioner, Xavier Lumar J-Weial, and Erranja Tillman. A high speed pursuit ensued. The suspect vehicle continued southbound through the Lamont area. The driver, later identified as Petitioner, drove as if he had no regard for traffic in the area, including foot and bicycle traffic. Most of the pedestrians and those on bicycles were children. As the vehicle proceeded southbound, the occupants tossed out a large

---

[2] The facts are derived from the factual summary set forth in the probation officer's report. See Answer, Exhibit H at pp. 5-6.

U.S. District Court
E. D. California         cd                                2

amount of money. The vehicle accelerated to 90 miles per hour and drove through a four-way stop. At one point, the vehicle reached 110 miles per hour. When Petitioner tried to pass a truck on the dirt shoulder, the vehicle fishtailed. It went out of control and rolled over.

A high-risk traffic stop was initiated, and J-Weial, Tillman, and Petitioner were arrested.

Officers learned that Petitioner and J-Weial entered Safe One Credit Union and approached Melissa G., one of the tellers, to cash a check. Melissa G. told them since they were not members, the credit union could not cash their check. They were directed to a check cashing business, and they left.

Approximately 15 minutes later, Petitioner and J-Weial returned to Safe One where they contacted Mary H., who also told them the credit union could not cash their check because they were not members. At that time, J-Weial passed a piece of paper to Mary H., which stated, "Give me your money." He then brandished a handgun and pointed it at her. Mary H. retrieved the keys to the cash drawer and tried to open it. J-Weial stated, "Don't push anything. Hurry up!" When Mary H. told him she could not get the drawer open, Alicia F. came to assist. Meanwhile, Petitioner jumped over the counter, pointed a gun at Melissa G. and told her, "Open all your drawers or I'll shoot you! Give me all your money!" As she handed him the money, J-Weial reached through the other teller window and grabbed money out of the drawer. Petitioner also grabbed money out of the drawer. Shortly thereafter, they left the bank, walking southbound. According to the bank supervisor, J-Weial and Petitioner took $10,724.00.

**DISCUSSION**

**I.  Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); <u>Williams v. Taylor</u>, 529 U.S. 362, 375 fn.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. In addition, the conviction challenged arises out of the Kern County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 2241(d). Accordingly, the Court has jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

**II.  Legal Standard of Review**

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72,

*quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct, 28 U.S.C. § 2254(e)(1), and we are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

**III.  Review of Petition**

Petitioner presents three related claims challenging his plea bargain. In the first claim, Petitioner alleges his due process rights were violated when the terms of the plea were breached. In his second claim, he argues he was denied the effective assistance of counsel where counsel induced the plea by misrepresentation. In his third and final claim, he contends his plea was not knowing and intelligent. Respondent argues that all three claims are without merit.

**A. Background**

On January 25, 2001, a change of plea hearing was held. See Answer, Exhibit B. The following colloquy took place:

> [THE COURT:] . . . It's my understanding that Mr. Williams is now prepared to enter a plea and that the People are prepared to accept the plea and also prepared to justify the striking of certain enhancements that have been alleged in connection with the charged offenses.
>     Am I to understand that Mr. Williams is going to enter a plea to one count of robbery, admit the two prior convictions alleged as strikes with the People apparently striking the personally armed enhancement and the serious felony enhancement allegation?
>
> [PROSECUTOR] MS. SHARP: Yes, your Honor.
>
> [DEFENSE COUNSEL] MR. MARQUEZ: Yes, your Honor.

Id. at 4-5.

The prosecutor then offered her justifications for the striking of the enhancements. The Court stated:

> THE COURT: Okay. As a result of the plea, Mr. Williams, the mandatory sentence would be 25 years to life.
>
> MS. SHARP: That's correct.
>
> THE COURT: So you would be facing a potential obviously life sentence and could and would remain in prison potentially at least for the remainder of his life. It really doesn't get any longer than that regardless of the enhancements. On the other side, it does appear that there would be at least another 20 years that would be added to the minimum sentence. All right.
>     Also, whereas Mr. Williams at least based on Dr. Couture's report does have some problems in spite of the fact that he's presently competent, he does have a history of mental illness and also does have some current problems that don't arise or don't rise to the level of being presently incompetent to understand these proceedings. All right.
>     All right. Based on that motion, the Court will approve the taking of this plea and the striking of those enhancements for the purposes of taking of the plea.
>     And that's your understanding, Mr. Marquez, as well?
>
> MR. MARQUEZ: It is, your Honor.
>
> THE COURT: All right. Mr. Williams, is that your understanding as well, sir?
>
> THE DEFENDANT: Yes, sir.

Id. at 5-6.

The court then advised Petitioner of his <u>Boykin/Tahl</u>[3] rights, and Petitioner indicated he understood them. <u>Id</u>. at 7-9. The court then informed Petitioner again that he would be sentenced to state prison for 25 years to life with the possibility of parole, and Petitioner indicated he understood. <u>Id</u>. at 8-9. Before the proceedings concluded, Petitioner asked the court a question, as follows:

THE DEFENDANT: Before this proceeding is over can I ask you one question?

THE COURT: Sure can.

THE DEFENDANT: Okay. When I was sentenced to YA they - - the judge - - my lawyer asked the judge if I could get psychiatric help because he seen something was wrong with me and the judge stated emphatically that I would get psychiatric help and I didn't get any in YA.

Would I be able to get it in the penitentiary right now?

THE COURT: Well, that will be up to the Department of Corrections. I certainly - - we will be sending on to them all of the medical reports that have been, you know, prepared and submitted to the Court in these proceedings. They will have the benefit of those.

I - - at the time of sentencing, I would be prepared to find that there does appear that you do have some problems and again recommend to the Department of Corrections that you be housed in a situation where you can get that kind of treatment, but I can't control that. That's up to the Department of Corrections.

THE DEFENDANT: All right, sir.

THE COURT: But I'd be happy to do that.

THE DEFENDANT: All right. Thank you.

<u>Id</u>. at 10-11.

The court then inquired into Petitioner's understanding and motivation for the plea:

THE COURT: Okay. All right. I take it, Mr. Williams, you've had a lot of time to talk this matter over with your attorney, Mr. Marquez; is that correct?

THE DEFENDANT: Yes, I have talked with him.

THE COURT: And you've talked with him, I'm sure, about the evidence that's available against you and the evidence that might be available to - - in your favor. I have a hunch you've probably talked with him at some length about what the result would be if the case were taken to trial and what the penal consequences would be, in other words, what the sentence would be if you were convicted.

Mr. Williams, do you feel in any of those kinds of - - any of those conversations that you've had with Mr. Marquez do you feel that he's put any kind of pressure on you to get you to enter this plea?

---

[3] <u>Boykin v. Alabama</u>, 395 U.S. 238 (1969); <u>In re Tahl</u>, 1 Cal.3d 122, 132 (1969).

| | |
|---|---|
| 1 | THE DEFENDANT: No, sir. |
| 2 | THE COURT: Are you doing so because you feel it's in your best interest to do so? |
| 3 | THE DEFENDANT: At this time, yes, sir. |
| 4 | THE COURT: Okay. Has anyone promised you anything other than what you and I have talked about here this morning in court on the record in order to get you to enter this plea? |
| 5 | |
| 6 | THE DEFENDANT: No, sir. |
| 7 | THE COURT: Has anyone threatened you, any member of your family, or anyone close to you in order to get you to enter this plea? |
| 8 | THE DEFENDANT: No, sir. |
| 9 | THE COURT: Are you going to be entering this plea freely and voluntarily? |
| 10 | THE DEFENDANT: Yes, sir. |

Id. at 12-13.

The court then asked Petitioner if he had any questions before it would take the plea and admission. Petitioner responded:

> THE DEFENDANT: I just want to make sure I get some psychiatric help so - -
>
> THE COURT: Well, we'll certainly recommend that to the Department of Corrections, but it is up to them.
>
> THE DEFENDANT: Okay.
>
> THE COURT: Do you understand that?
>
> THE DEFENDANT: Yes, sir.

Id. at 13.

**B.  Ground One**

In his first ground for relief, Petitioner claims his due process rights were violated when the terms of the plea bargain were breached. Petitioner maintains the plea bargain consisted of Petitioner pleading to one count of second degree robbery and admitting to two prior strike convictions for a sentence of 25 years to life *to be served in a mental health facility*. Plea bargains are contractual in nature and subject to contract-law standards. United States v. Sandoval-Lopez, 122 F.3d 797, 800 (9th Cir.1997), *citing* United States v. Read, 778 F.2d 1437, 1441 (9th Cir.1985). As with other forms of contracts, a negotiated guilty plea is a "bargained-for quid pro quo." Sandoval-Lopez, 122 F.3d at

800, *quoting* United States v. Partida-Parra, 859 F.2d 629, 633 (9th Cir.1988). "Thus, either party can be said to 'breach' a plea bargain if it fails to live up to the promises it made under the terms of the agreement." Sandoval-Lopez, 122 F.3d at 800. "Where the government is in breach, there are several available remedies, including allowing the defendant to withdraw his guilty plea or ordering 'specific performance' by the government." Id., *citing* Partida-Parra, 859 F.2d at 633, *citing* United States v. Herrera, 640 F.2d 958, 960 (9th Cir.1981).

This claim was first presented in a habeas petition to the Kern County Superior Court. (LD 6.) On December 20, 2001, the superior court denied the claim in a reasoned opinion. (LD 7.) Petitioner then filed a habeas petition in the Fifth DCA, which denied the petition on January 30, 2002. (LD 8, 9.) He then presented the claim in a habeas petition to the California Supreme Court, and it was denied on July 10, 2002. (LD 10, 11.) The California Supreme Court, by its "silent order," is presumed to have denied the claims presented for the same reasons stated in the opinion of the lower court. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

The Kern County Superior Court analyzed and rejected the claim as follows:

> Petitioner states that his attorney and the Court promised he would receive psychiatric treatment in prison and that that promise was not kept. However, Petitioner fails to present any facts and/or documentary evidence that receiving psychiatric treatment was a condition or term of the plea agreement. According to the Change in Plea Transcript, the plea terms consisted of Petitioner pleading to one count of 2nd degree robbery and admitting two prior convictions on the condition that the remaining counts/allegations being stricken and that he receive no more than 25 years to life as a sentence. [Citation.] That is the sentence that Petitioner received.
>
> The Change of Plea Transcript fails to show that Petitioner's request for psychiatric treatment was a condition of the plea. The Change of Plea Transcript indicates that at the hearing, Petitioner asked if he would receive psychiatric treatment in prison and then further in the hearing stated that he wanted to make sure he received such treatment. [Citation.] The Judge responded both times that it would be up to the CDC to house Petitioner in a facility where Petitioner could receive such treatment, but that the Judge would make a recommendation that they do so. [Citation.] This exchange does not rise to a promise that Petitioner would received [sic] treatment nor does it rise to the level of being a term or condition of the plea. All that was promised was a recommendation for such treatment. Such a recommendation was made per the January 25, 2001, Minute Order.
>
> Petitioner does not present any other facts or documentary evidence to establish that his request for psychiatric treatment was a condition of the plea.
>
> Therefore, Petitioner's claim that the Judge's recommendation for psychiatric treatment was a term of the plea agreement is, therefore, an unsupported conclusory allegation that is insufficient to support the relief granted. [Citation.] Accordingly, Petitioner has not provided clear and convincing evidence that any promise/condition/term of the plea

was violated and, therefore, had failed to establish there is good cause to grant his motion to withdraw his plea.

(LD 7.)

The state court rejection of Petitioner's claim was entirely reasonable. Upon review of the record, it is quite clear that placement in a mental health facility was not a part of the plea agreement. When Petitioner requested placement in a such a facility, on both occasions the court informed him that this decision was for the California Department of Corrections to make and all the court could do was recommend such a placement, which it did. Further, the record shows Petitioner understood this and agreed to such terms. The claim is patently without merit and should be denied.

### C.  Ground Two

In a related claim, Petitioner contends he received ineffective assistance of counsel for counsel's misrepresentations to Petitioner that he would be placed in a mental health facility if he entered a plead of no contest.

Ineffective assistance of counsel is based on the Sixth Amendment right to counsel, which exists "in order to protect the fundamental right to a fair trial." Lockhart v. Fretwell, 506 U.S. 364, 368 (1993), *quoting* Strickland v. Washington, 466 U.S. 668, 684 (1984)). A claim for ineffective assistance must meet the two-part test advanced by the Strickland court. First, petitioner must show that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.  Second, [Petitioner] must show that the deficient performance prejudiced the defense. Strickland, 466 U.S. at 687.  This two-part standard also applies to challenges to guilty pleas based on ineffective assistance of counsel.  As explained by the Supreme Court in Tollett v. Henderson, 411 U.S. 258, 267 (1973), a defendant who pleads guilty upon the advice of counsel may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the range of competence demanded of attorneys in criminal cases. In the context of a guilty plea, a petitioner must show that (1) his counsel failed to provide reasonable competent advice, and that (2) there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 58-59 (1985).

There is no merit to Petitioner's claim. He argues that counsel misrepresented that he would serve his sentence in a mental health facility, but the record belies this allegation. On two occasions Petitioner asked the court whether he could serve his sentence in a mental health facility, and in both instances the court informed Petitioner that the most the court could do is provide a recommendation to the Department of Corrections. Petitioner was further advised that the decision of where to house Petitioner was ultimately the Department of Corrections to make. Further, on both occasions Petitioner stated he fully understood this and would enter his plea nonetheless. There is simply nothing in the record to support Petitioner's claim that he entered his plea due to misrepresentations made by counsel. The state court rejection of this claim was not contrary to or an unreasonable application of clearly established Federal law, or an unreasonable determination of the facts. Thus, the claim should be denied.

### D. Ground Three

In his final claim for relief, Petitioner contends his plea was not knowing and intelligent. A plea of guilty is constitutionally valid only to the extent it is "voluntary" and "intelligent." Brady v. United States, 397 U.S. 742, 748 (1970). In determining whether a plea was knowingly, voluntarily and intelligently made, a reviewing court must accord a strong presumption of verity to the declarations made by a defendant in open court. Blackledge v. Allison, 431 U.S. 63, 74 (1977). "[R]epresentations [made by] the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." Id. at 73-74. Furthermore, Petitioner's allegations of a coerced plea must be specific and point to a real possibility of a constitutional violation. "[S]ubsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." Id. at 74, *citing* Machibroda v. United States, 368 U.S. 487, 495-496 (1962); Price v. Johnston, 334 U.S. 266, 286-287 (1948).

As noted by Respondent, the court, upon reviewing the doctor's report made pursuant to Cal. Penal Code § 1368 which established that Petitioner was competent to stand trial, determined Petitioner was competent to enter his plea. See Answer, Exhibit B at 2-3. Petitioner's counsel also agreed with the determination. Id. The court then informed Petitioner of the rights he was giving up

by entering his plea, and Petitioner stated he understood and waived said rights. Id. at 6-12. The court then inquired whether Petitioner had been pressured by his counsel to enter a plea to which Petitioner responded, "No, sir." Id. at 12. When asked whether anyone had promised anything other than what was discussed in open court, Petitioner responded, "No, sir." Id. When asked whether anyone had threatened him to enter a plea, he responded, "No, sir." Id. at 13. When asked if he was entering the plea because he felt it was in his best interest to do so, he stated, "At this time, yes, sir." Id. at 12. Finally, when asked if he was entering the plea freely and voluntarily, he stated, "Yes, sir." Id. at 13. Petitioner's allegation is completely conclusory, unsupported by any facts, and as shown above, flatly contradicted by the record. The claim should be denied.

## RECOMMENDATION

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED. It is FURTHER RECOMMENDED that the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Oliver W. Wanger, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days (plus three days if served by mail) after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **July 14, 2008**                        **/s/ Gary S. Austin**
                                                                UNITED STATES MAGISTRATE JUDGE